## THE NIKITA.

### SUNDSTROM v. FRAGNUL.

(Circuit Court of Appeals, Fifth Circuit. June 5, 1894.)

### No. 229.

MARITIME LIENS—ENFORCEMENT—LACHES.

Attempts to enforce a lien for supplies and repairs to an Italian vessel at Marseilles were made at her first port of arrival in Europe, and, about a year later, on her return to Europe from a voyage to Buenos Ayres; but, though payment was contested, no effort was made to follow the vessel to Buenos Ayres, the only port to which she made regular voyages, and the residence of her owner; and the lien was not indorsed on her certificate of registry as provided by the law of Italy for giving notice of such liens. *Held,* that the lien could not be enforced against an innocent purchaser for full value of the vessel at Buenos Ayres, who made every possible inquiry before purchasing.

Appeal from the District Court of the United States for the Northern District of Florida.

This was a libel by John O. Sundstrom against the bark Nikita, formerly named the Duca di Galliera, to enforce claims for repairs and supplies. The district court dismissed the libel. Libelant appealed.

John C. Avery, for appellant.

W. A. Blount and A. C. Blount, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

LOCKE, District Judge. The Italian bark Duca di Galliera, declared to be of Genoa, with one G. Maglio, master, was at the port of Marseilles, France, in November, 1888, and had sails and tarpaulins made, and other canvasswork, amounting to 2,921 francs, done, by John O. Sundstrom, for which Maglio, as master, gave him a note payable to his order 20 days after his arrival at a port in Europe from the voyage which he was about to undertake, to Buenos Ayres and Pensacola, or, in the event of the loss of the

vessel, to be paid from the insurance. At about the same time one Scotto did some woodwork and repairs to the vessel, for which Maglio gave him a note, secured on the value of the vessel, payable in four months. These notes both bore date the 26th January, 1889, and unquestionably gave a lien upon the vessel, under the general admiralty law. Scotto's, first becoming due, was presented for payment where made payable in Marseilles, but was protested for nonpayment. He then indorsed the same to Sundstrom for collection. In April, 1890, Sundstrom, learning that the bark had arrived at Newcastle on the Tyne, sent his notes there for collection; but the mate in charge stated that Maglio was in Buenos Ayres, the master was not on board, and he did not know when he would return, and that he had no instructions to pay them,—that the vessel had been there four months. Sundstrom says that the Credit Lyonnais, who held the drafts, commenced suit for nonpayment, but, the English law not recognizing debts made out of England, the vessel was released, and proceeded to Buenos Ayres with cargo. On her return from that second voyage, and upon her arrival at Hamburg, Sundstrom alleges that he atttempted to have her seized again; but that the master used extraordinary vigilance in having her entered at the customhouse as loading for Las Palmas, and the government would not permit her attachment. He says that he also attempted to have her seized at Las Palmas, but, the laws being nearly identical with those of England, he could not succeed, and she again sailed for Buenos Ayres; and he, knowing she was to return by Pensacola, forwarded his claim there, where the suit was commenced October 10, 1892, for the amount of his and Scotto's notes, and the expenses which had been incurrred in the attempts to make the collection. In the meantime, on the 10th of July, 1892, the bark was sold at Buenos Ayres, for 35,000 francs, to one Nicholas Sichirich, in whose behalf her master now claims her, and who had her flag and nationality changed from the Italian to the Austrian, and her name changed from Duca di Galliera to Nikita. The purchase is claimed to have been made in good faith, for full value paid in cash, and the evidence tends to support such claim, and shows nothing to the contrary. The transfer was made by Maglio, by a power of attorney from one Carlo Francesco, the owner, at the Italian consulate, in the presence of the consul, and was certified to by him. There was at the time of sale found indorsed upon the certificate of registry of the vessel a lien upon her of 13,625 francs, which was taken charge of by the consul out of the purchase money, and held for the benefit of the creditors. The purchase of the vessel was advertised in La Nacion and La Prensa, the two leading newspapers of Buenos Ayres, calling upon any one having claims against the vessel to come forward and present them. The Code of Commerce of Italy provides that any credit given vessels, in order to be privileged, must be indorsed in the national certificate of registry of the vessel, and that no Italian consul shall proceed to sell any vessel without first pro-

tecting the rights of the holder of such privileged credits. The national register of every Italian vessel, which is her evidence of nationality, has a special column for the indorsement and registering of such liens or privileged credits. The lien of the libelant in this case was not so entered upon the register of the Duca di Galliera.

The only question which appears to demand consideration in this case is whether the libelant has forfeited the right to enforce his lien on this vessel, as against an innocent purchaser for full value, either on account of his failing to prosecute the same more actively, and with earlier result, or on account of his failure to have it recorded upon the certificate of registry in accordance with the law of the country to which the vessel belonged. In reading his testimony, it would seem that he had continued his exertions, and made attempts at collection in immediate succession; but when the places are considered, and the times at which such efforts must have been made, although no dates are given or times specified when suit was sought to be brought at Hamburg or Las Palmas, it appears clear that much time was permitted to elapse between such efforts. The evidence shows that while an attempt was made to enforce the lien at the first port of her arrival in Europe, in accordance with the note and agreement to pay, yet after the failure to collect the money there, and notice thereby that payment would be contested, and that Maglio, who had given the note, was in Buenos Ayres,—the only port to which the vessel was making regular voyages, and where it appears the owner resided,—no effort was made to follow the vessel to that port with notice of the indebtedness and lien. The length of time which must have been permitted to elapse until she again returned to Europe, when another attempt was made, must have been about a year. Even then the vessel was not followed to what appears to have been, for all practical purposes, her home port, the residence of her owner, and of the acting owner or master and attorney in fact. There is no statute of limitation in admiralty to bar a suit in an effort to enforce a lien, but each case in determining the laches of a libelant must stand upon its own peculiar circumstances and the rights and relations of the parties. Nothing but the most prompt diligence and energetic action will justify a court of admiralty in enforcing a lien when the loss must fall upon an innocent purchaser who has been drawn into a purchase by the negligent silence of the lienor. A creditor may trust his debtor and accept promises and wait the day when a happy turn of fortune may enable him to pay more easily; but if so he assumes the risk of his debtor's honesty and cannot put the burden of loss upon one whom he has permitted to be entrapped. While time may be granted, with some reason where the vessel is within easy reaching distance and where her movements and the business transactions of her owners may be known and watched, there is no reason where payment has been once refused by a foreign vessel and she leaves on long voyages where

she may be sold in any port that the lien should not be enforced or secured with all possible dispatch. The speed of mail or telegraphic communication in these days of steam and electricity has changed materially the principle of laches in admiralty; and what in the past would have been accomplished with so much difficulty, in enforcing a lien, that no court would have demanded it, is now so little of an inconvenience as to be deemed but reasonable. The ease with which maritime information can be obtained, and the movements of vessels of all classes traced, leaves no excuse for lack of diligence or loss of time in permitting them to continue their voyages under a secret lien, and he who does so permit it does it at the peril of encountering the bona fide claim of an innocent purchaser. Any one dealing with a foreign vessel upon credit should inform himself to a certain extent, regarding the manner given by the laws of that nation for perpetuating and giving notice of such a lien; and while we do not desire to say that an admiralty lien, honestly obtained, should not be enforced under the laws of a forum permitting such enforcement, even in the absence of such a registration as is required, such registration is an additional protection and safeguard, of which the creditor should avail himself, if he desires to show due diligence. The papers of a vessel are always open to the examination and inspection of any one of whom the master is asking credit, and the law for the registering of liens upon vessels of the nationality of this one, as shown in this case, is but a reasonable protection for all parties dealing with her, which should be taken advantage of by them. While no laches can be imputed to the libelant, in this case, which would render void or invalid his lien in the absence of any superior intervening right, the intervention of such right is a risk which he assumed when anything but the utmost diligence was exercised, especially where notice of a desire to avoid payment and contest any suit was plainly given. In not following up the enforcement of his lien with greater diligence, and not seeing that it was duly indorsed upon the certificate of registry, we consider that the libelant has been so far guilty of laches as not to be entitled to protection at the expense of an innocent purchaser, who in no way appears to be in fault, but who made every inquiry possible before purchasing. It is ordered the decree below be affirmed, with costs.